UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00040-HBB

**VONNIE M. DAVIS**                                                              **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

MEMORANDUM OPINION
AND ORDER

BACKGROUND

Before the Court is the complaint (DN 1) of Vonnie M. Davis ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 12) and Defendant (DN 14) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered May 21, 2020 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Supplemental Security Income Benefits on February 24, 2017 (Tr. 15, 187-93).   Plaintiff alleges to have become disabled on December 1, 2012,[1] as a result of severe depression, cholesterol, high blood pressure, and carpal tunnel (Tr. 15, 68-69, 84, 187).   These claims were initially denied on July 3, 2017,[2] and the denial of the claims were affirmed upon reconsideration on August 8, 2017 (Tr. 20, 80-81, 96).   Administrative Law Judge Pearline Hardy ("ALJ") conducted a video hearing from St. Louis, Missouri on October 11, 2018 (Tr. 15, 31-33).   Virtually present at the hearing from Bowling Green, Kentucky was Plaintiff and his attorney Richard Burchett (Id.).   During the hearing, Cyndee Burnett testified as a vocational expert (Tr. 15, 33, 58-63).

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 24, 2017, the application date (Tr. 17).   At the second step, the ALJ determined Plaintiff has the following severe impairments: carpal tunnel syndrome status post releases, posttraumatic stress disorder (PTSD) with agoraphobia, major depressive disorder, substance abuse (methamphetamine, opiates, and marijuana), and obstructive sleep apnea (Id.).   The ALJ also found Plaintiff's high blood pressure, cholesterol, kidney and ureteral stones, hypertension, and dyslipidemia to be nonsevere (Tr. 18).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Id.).

---

1   Plaintiff later amended his disability onset date to December 1, 2016 (Tr. 15, 209).

2   The ALJ stated that Plaintiff's initial claim was denied on July 4, 2017 (Tr. 15).   However, the signature of Disability Adjudicator/Examiner Phyllis Bechtloff is dated July 3, 2017 (Tr. 81).   This appears to be a harmless typographical error.

2

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c) except for the following limitations: Plaintiff can use frequent operation of hand controls; frequent handling; frequent fingering; no work at unprotected heights; no climbing ladders, ropes, or scaffolds; no work with moving mechanical parts; occasional exposure to dust, odors, fumes, and pulmonary irritants; occasional exposure to extreme cold; no work with vibration; limited to performing simple, routine tasks, also repetitive tasks but not at a production rate pace such as assembly line work; limited to simple work related decisions; no interaction with the public; superficial interaction with coworkers not requiring group tasks; tolerating few changes in routine work setting; low stress work environment; and will be off task five percent in an eight hour workday (Tr. 20).   The ALJ found Plaintiff has no past relevant work (Tr. 24).   After this finding and moving on to the fifth step of the sequential determination, the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since February 24, 2017, the date the application was filed (Tr. 25).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 182-84).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton

3

v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an:

4

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenge to Finding No. 2

1.   Arguments of the Parties

Plaintiff argues that the ALJ erred by failing to properly consider Plaintiff's headaches to be a severe impairment (DN 12 PageID 761-63).   In support of this claim, Plaintiff alleges that "[a]n MRI was performed which was consistent with small vessel disease.   The report stated the

5

findings can be associated with chronic headaches" (Id. at PageID 761).   Further, "[r]estrictions due to the valid headache diagnosis would be expected to further restrict the Plaintiff's capabilities for sustaining medium work on a full time basis" (Id. at PageID 762).   Based upon this claim, Plaintiff asserts "[a] remand of the claim is, therefore, necessary for proper analysis of the severe impairment issue" (Id. at PageID 763).

In contrast, Defendant claims that the ALJ found that Plaintiff had several severe impairments and "considered other impairments that she ultimately concluded were non-severe" (DN 14 PageID 775).   Defendant cites to Pompa v. Comm'r of Soc. Sec., 73 Fed. Appx. 801 (6th Cir. 2003), Anthony v. Astrue, 266 Fed. Appx. 451 (6th Cir. 2008), and Maziarz v. Health & Human Servs., 837 F.2d 240 (6th Cir. 1987), in asserting that it "is of little consequence" for the ALJ not to characterize an impairment as severe, so long as another impairment is considered severe (Id. at PageID 775-76).   Therefore, Defendant contends "[t]he ALJ reasonably considered Plaintiff's headaches, and did not commit reversible error by failing to name Plaintiff's headaches as a severe impairment at step two" (Id. at PageID 778).

2.  Discussion

At the second step in the sequential evaluation process a claimant must demonstrate she suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ." 20 C.F.R. § 416.920(a)(4)(ii); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his or her physical or mental ability to do "basic work

activities."   20 C.F.R. § 416.922(a).   The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.922(b).   To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment.   20 C.F.R. § 416.921; SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).   To satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."   20 C.F.R. § 416.909.

The undersigned finds it unnecessary to decide whether the ALJ erred in failing to find Plaintiff's medically determinable impairment is severe.   The Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the ALJ should consider both the severe and non-severe impairments in the remaining steps.   *See* Anthony v. Astrue, 266 F. Appx. 451, 457 (6th Cir. 2008) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).   Thus, once a severe impairment is found, the ALJ must consider the "*combined effect*" of all the medically determinable severe and non-severe impairments in assessing a claimant's RFC.   *See* 20 C.F.R. §§ 416.923(c) (emphasis added), 416.845(a)(2); Simpson v. Comm'r of Soc. Sec., 344 F. Appx. 181, 190-91 (6th Cir. 2009); White v. Comm'r of Soc. Sec., 312 F. Appx. 779, 787 (6th Cir. 2009).   These procedural requirements serve both to ensure adequacy of review and give Plaintiff a better understanding of the disposition of his case.

According to the regulations, upon determining that a claimant has at least one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation outlined

above.  Maziarz, 837 F.2d at 244.  Here, the ALJ found that Plaintiff suffered from the severe impairments of carpal tunnel syndrome status post releases, posttraumatic stress disorder (PTSD) with agoraphobia, major depressive disorder, substance abuse (methamphetamine, opiates, and marijuana), and obstructive sleep apnea (Tr. 17).  Accordingly, the ALJ continued with the remaining steps in the disability determination.  Because the ALJ considered the limitations imposed by Plaintiff's medically determinable severe and non-severe impairments in determining whether he retained sufficient RFC to allow him to perform jobs in the national economy (Tr. 20-25, 56-63), the ALJ's purported failure to find that Plaintiff's impairments "severe" within the meaning of the regulations could not constitute reversible error.  Maziarz, 837 F.2d at 244.

Challenge to Finding No. 3

1. Arguments of the Parties

Plaintiff contends that the ALJ's discussion in the paragraph B findings only reviews two adult function reports and "give[s] only a superficial review of the evidence contained therein and does not provide a logical rational[e] that would lead to the conclusion with regard to each category" (DN 12 PageID 764).  Plaintiff then goes on to list the documents that the ALJ purportedly failed to consider: third-party reports, Plaintiff's mother's report, other reports completed by Plaintiff, observation reports by field office representatives, findings and observation notes of a consultative psychological examiner Dr. Seigler, Dr. Kapley's statement regarding limitations and observations, and Plaintiff's own testimony during the administrative hearing (Id. at PageID 764-65).  Ultimately, Plaintiff asserts that "the administrative decision falls short of providing the required level of review considering all relevant medical and non-medical evidence in the case record" (Id. at PageID 765).

Defendant disputes Plaintiff's argument by claiming that "the ALJ reasonably concluded that Plaintiff did not meet or medically equal any listing" (DN 14 PageID 778).   Defendant further argues that the ALJ "carefully analyzed each functional area and, while she did not include all of the medical evidence in her discussion at step three, she logically laid out how she considered each of the 'paragraph B' criteria and how Plaintiff's self-reports supported her findings" (Id. at PageID 778-79).   Defendant concludes by asserting that "[a]ny error with respect to an ALJ's step-three analysis is harmless unless the claimant can establish that he satisfied the listing in question. Thus, any error by the ALJ at step three was, at most, harmless" (Id. at PageID 779).

2.   Discussion

At the third step, a claimant will be found disabled if his impairment meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. § 416.920(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. Appx. 488, 491 (6th Cir. 2010).   The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."   20 C.F.R. § 404.1525(c)(3).   A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled.   See 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).   However, a claimant is also deemed disabled if his impairment is the medical equivalent of a listing.   20 C.F.R. § 404.1520(a)(4)(iii); Turner, 381 F. Appx. at 491.   Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. § 404.1526(a).   "An

administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."  Reynolds v. Comm'r Soc. Sec., 424 F. Appx 411, 415 (6th Cir. 2011).   Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing.  *See* 20 C.F.R. § 404.1526(c) and (d); SSR 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

The severity requirements for Listings 12.04, 12.06, and 12.15 are set forth in paragraphs "B" and "C" of the listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A.  The paragraph "B" criteria are: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "*3. Concentrate, persist, or maintain pace (paragraph B3)*"; and "*4. Adapt or manage oneself (paragraph B4)*".  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4. These four areas of mental functioning are evaluated on the following five-point rating scale:

a. *No limitation (or none)*.   You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

b. *Mild limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c. *Moderate limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. *Marked limitation*.   Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. *Extreme limitation*.   You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

10

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2a-e.   To satisfy the paragraph "B" criteria for Listings 12.04, 12.06, and 12.15, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2, Listing 12.04 Depressive, bipolar and related disorders, Listing 12.06 Anxiety and obsessive-compulsive disorders, and Listing 12.15, Trauma- and stressor-related disorders.

The ALJ stated, examined, and analyzed the four paragraph "B" criteria (Tr. 18-19). When looking to understanding, remembering, or applying information, the ALJ found that Plaintiff has a moderate limitation because Plaintiff "reported that his conditions affected his memory, understanding and ability to follow instructions" (Tr. 18).   Further, Plaintiff "reported that his mother reminded him to take medication as well as take care of personal needs and grooming[;] … he was not able to follow spoken instructions well, but he was able to follow written instructions as long as he could understand them" (Id.).   When turning to interacting with others, the ALJ found that Plaintiff has a moderate limitation (Id.).   This conclusion was based upon Plaintiffs "report[s] that he was not a social person and could not deal with other people[;] … he was not able to be around a lot of other people and had anxiety attacks[;] … he also reported that he did not have problems getting along with family, friends, neighbors or others[;] … he usually tried to avoid authority figures, but he could get along with them pretty well" (Tr. 19).   As for concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff has a marked limitation because Plaintiff "reported that his condition affected his ability to concentrate and complete tasks[;] … he was not able to pay attention for long periods of time[;] … [he] reported the ability to sustain attention, concentration and persistence to perform some daily tasks and activities[;] … he [is] able to concentrate, attend and persist to perform personal care activities, shop in stores,

drive a vehicle, perform household chores, watch television and play video games[;] … he [is] able to handle money management activities such as paying bills and counting change" (Id.). Finally, the ALJ found that Plaintiff has a moderate limitation in adapting or managing oneself (Id.).  Plaintiff "reported that he did not handle stress or changes in routine well[;] … he was generally able to perform activities of daily living independently[;] … he did not have any problems taking care of personal needs[;] … he prepared meals daily[;] … he perform[s] household chores with encouragement from his mom[;] … [he gives] food and water to the dogs and cats[;] … [h]e drove a vehicle, shopped in stores monthly and went out alone[;] … he engaged in hobbies, including watching television and playing video games on a daily basis[;] … he was able to handle money management such as paying bills and counting change" (Tr. 19).

In his argument, Plaintiff does not specifically cite to any Listing that he claims he could meet or medically equal, if the ALJ had considered all the evidence Plaintiff asserts the ALJ neglected to review (DN 12 PageID 763-65).   Instead, Plaintiff states that a remand is necessary for "full consideration of the claim and a detailed explanation of the reasons for the [ALJ's] conclusions" (Id. at PageID 765).   As the Plaintiff properly points out, the ALJ's step three determination cited to only two exhibits in the record: 5E (Tr. 251-59) and 8E (Tr. 271-79). Plaintiff's argument primarily focuses on Section 12.00F(3)(a) of the Listed Impairments, which states, "[w]e use *all of the relevant medical and non-medical evidence in your case record* to evaluate your mental disorder" (DN 12 PageID 764) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00F(3)(a)) (emphasis added).

However, Plaintiff fails to take into account that the ALJ's determination needs to be read as a whole.   Rogers v. Comm. of Soc. Sec., 486 F.3d 234, 246 (6th Cir. 2007); Seibert v. Comm.

of Soc. Sec., No. 17-13590, 2019 WL 1147066, at *1 (E.D. Mich. Mar. 13, 2019); Bledsoe v.

Comm. of Soc. Sec., No. 1:19-CV-564, 2011 WL 549861, at *5 (S.D. Ohio Feb. 8, 2011).   While

the ALJ specifically cited Exhibits 5E (Tr. 251-59) and 8E (Tr. 271-79) in her step three analysis,

the ALJ later utilized Exhibits 1A (Tr. 67), 4A (Tr. 83-96), 3E (Tr. 237-45), 1F (Tr. 332-417), 2F

(Tr. 418-24), 3F (Tr. 425-63), 4F (Tr. 464-500), 5F (Tr. 501-19), 6F (Tr. 520-28), 8F (Tr. 537-50),

10F (Tr. 592-688), and 11F (Tr. 689-97) (Tr. 20-24).

Throughout Plaintiff's arguments, he asserts that the ALJ neglected to review Tr. 37-55,

236, 237, 240, 242, 245, 246-50, 280-84, 418-23, 592-688, and 689-697 (DN 12 PageID 763-65).

When reviewing the exhibits cited by the ALJ, in contrast to the pages Plaintiff asserts were

omitted, there are only two instances where Plaintiff's pages were not cited by the ALJ: Tr. 37-55

(the Hearing Transcript) and Tr. 236 (a blank page at the conclusion of an Adult Disability Report

from February 24, 2017).

Further, Plaintiff claims the ALJ's "decision did not review the findings and observation

notes of a consultative psychological examiner, Dr. Seigler[, and it] … did not acknowledge or

give rationale for discrediting Dr. Seigler's rating the Plaintiff to fall within a 'marked' degree of

limitation in three of the functional areas" (DN 12 PageID 764-65).[3]   In the ALJ's RFC

determination, the ALJ gave some weight to the opinion of Dr. Seigler, specifically in finding that

"[t]he evidence generally supports moderate mental limitations, except [in the paragraph "B"

criteria where Dr. Seigler opined] marked limitations …" (Tr. 23).   Some weight was awarded

---

3    The disability determination document lists Kathy Seigler, Psy.D., as the consultant, and it states that she works
     for Skaggs Consulting, PLLC (Tr. 418-423).   However, when the ALJ reviewed the same documentation, the
     ALJ listed the psychological examiner as Dr. Emily Skaggs, Psy.D. (Tr. 22-23).   While there is a discrepancy
     with the name of the examiner, the substance of the examination is consistent.   To maintain consistency, the
     undersigned will continue to identify the examiner as Dr. Seigler, but the ALJ's determination will be construed
     as Dr. Skaggs and Dr. Seigler being used synonymously.

because Plaintiff's "mental status examination showed some abnormalities during the evaluation, including restricted affect and depressed mood with poor concentration and redirected speech. However, the claimant also had no evidence of emotional distress, normal eye contact and cooperative attitude.   He had appropriate thought content as well as logical and goal directed organization of thought" (Tr. 23) (citing Tr. 418-423).   This explanation precisely answers why the ALJ's determination did not coincide with Dr. Seigler's opinions about the 'marked' degree of limitation in functional areas.   Thus, the ALJ's assignment of weight to the opinion of Dr. Seigler is supported by substantial evidence and comports with applicable law.

Finally, Plaintiff claims the ALJ's "did not review or cite any of the Plaintiff's medical treatment in explaining the Plaintiff's abilities in the functional categories, including 18 months of treatment with psychiatrist, Dr. Kapley[, and] [t]he decision … did not review the statement of limitations observations provided by Dr. Kapley in a medical source statement" (DN 12 PageID 765).   The ALJ gave little weight to Dr. Kapley, "as it is not consistent with the evidence overall.   He does not provide specific mental limitations, but only states that the claimant is not able to work at any job on a consistent, reliable or predictable basis" (Tr. 23-24).   The ALJ goes on to explain:

> However, his assessment is not completely consistent with the medical evidence including his own treatment notes.   The claimant's treatment records indicate the claimant had some abnormalities.   However, the claimant was fully oriented and generally had normal thought processes, no flight of ideas, no hallucinations, no problems with memory, normal grooming and hygiene, normal speech, and no significant problems with attention or concentration. Furthermore, the claimant's mental health symptoms with problems with concentration and socialization is adequately accounted for in the above-described residual functional capacity.   Dr. Kapley also noted that he did not believe the claimant would be able to work full time which is an administrative

14

> finding dispositive of the case and reserved to the Commissioner pursuant to 20
> CFR 404.1527(d).

(Tr. 24). This description evaluates the opinions of Dr. Kapley, finds them unpersuasive or

reserved for the Commissioner, and awards little weight (Id.). This evaluation directly contradicts

Plaintiff's assertions. Thus, the ALJ's assignment of weight to the opinion of Dr. Kapley is

supported by substantial evidence and comports with applicable law.

Based upon this review and analysis, the ALJ's determination is supported by substantial

evidence and comports with applicable law, and Plaintiff's challenge fails.

Challenge to Finding No. 4

1. Arguments of the Parties

Plaintiff claims that the ALJ erred in determining Plaintiff's RFC because the ALJ had

neglected to "discuss the majority of the medical evidence demonstrating whether the Plaintiff has

the ability to function independently, appropriately, effectively, and on a sustained basis despite

his mental impairments", and the ALJ "improperly reject[ed] the disabling report of treating

psychiatrist, Dr. Kapley" (DN 12 PageID 766). Plaintiff points to a myriad of medical reports

that Plaintiff argues is necessary for the ALJ to discuss, and "[f]urther evaluation of the Plaintiff's

mental impairments and related subjective complaints" is required (Id.).

Defendant, in turn, asserts that "[w]hile Plaintiff argues that the ALJ did not consider

multiple findings, the ALJ reasonably considered the evidence as a whole and substantial evidence

supports her conclusions that Plaintiff could perform a range of work with numerous nonexertional

limitations" (DN 14 PageID 779) (citing Tr. 17-24). Plaintiff also argues that "[t]he ALJ noted

that Plaintiff only presented for routine and conservative treatment during the relevant period and

15

that the records failed to show any significant deterioration or worsening of Plaintiff's mental health around the time Plaintiff filed his application" (Id. at PageID 780) (citing Tr. 22).   Further, Defendant claims the ALJ articulated several reasons why Dr. Kapley's opinion was awarded little weight (Id. at PageID 783) (citing Tr. 23-24).   Defendant concludes by asserting that the ALJ did not abuse her discretion in weighing all the evidence in her determination (Id. at PageID 784).

   2.   Discussion[4]

   The RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 416.945(a), 416.946(c).   The ALJ makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 416.929, 416.945(a), 416.946(c).   Thus, in making the RFC finding the ALJ must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 416.927(c), 416.929(a).   While opinions from treating and examining sources are considered on the issue of RFC, the ALJ is responsible for making that determination.   20 C.F.R. § 416.927(d).

   There is a difference between a medical opinion and an RFC Assessment prepared by the ALJ.   The medical opinion is submitted by a medical source and expresses impairment-related functional limitations.   20 C.F.R. § 416.913(a)(2), 416.927(a)(1).   By contrast, the RFC Assessment is the ALJ's ultimate finding of what the claimant can still do despite his or her

---

4   As Plaintiff's Challenge to Finding No. 4 solely focuses on alleged errors pertaining to Plaintiff's mental impairments, the Court will deem any objections to the physical RFC to be waived.   It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).

physical and mental limitations.   20 C.F.R. § 416.945(a), 416.946.   As Plaintiff filed his applications prior to March 27, 2017, the rules in 20 C.F.R. § 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record.   The regulations require ALJs to evaluate every medical opinion in the record.   20 C.F.R. § 416,927(c).   The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source.   20 C.F.R. § 416.927(c).   If controlling weight is not assigned to the treating source's opinion, the ALJ must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the treating source.   20 C.F.R. § 416.927(c).

In assessing a claimant's RFC, the ALJ must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. § 416.929; SSR 16-3p.   A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.   20 C.F.R. § 416.929(a).   In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First, the ALJ must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown

17

by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. § 416.929(c)(3).

Here, the ALJ found that Plaintiff to perform medium work as defined in 20 C.F.R. § 416.967(c) except for the following limitations: Plaintiff can use frequent operation of hand controls; frequent handling; frequent fingering; no work at unprotected heights; no climbing ladders, ropes, or scaffolds; no work with moving mechanical parts; occasional exposure to dust, odors, fumes, and pulmonary irritants; occasional exposure to extreme cold; no work with vibration; limited to performing simple, routine tasks, also repetitive tasks but not at a production rate pace such as assembly line work; limited to simple work related decisions; no interaction with the public; superficial interaction with coworkers not requiring group tasks; tolerating few changes in routine work setting; low stress work environment; and will be off task five percent in an eight hour workday (Tr. 20).

In coming to this conclusion, the ALJ found:

> In terms of the claimant's physical and mental impairments, the [ALJ] does not find the evidence supports the severity of the alleged symptoms and limitations based on the evidence in the record.   The claimant alleged significant physical and mental limitations, which are not supported by the medical record.   The claimant's treatment records fail to document functional limitations consistent with those alleged by the claimant.   The record shows the claimant's impairments were generally stable and/or improved with prescribed treatment. The [ALJ] has considered the claimant's statements regarding the alleged symptoms and functional limitations and the [ALJ] finds the evidence does not support the degree of functional limitations alleged by the claimant.

(Tr. 21).

The ALJ specifically discussed and analyzed Plaintiff's mental impairments by recounting Plaintiff's complaints from the hearing testimony, and later stating, "the record shows that the

claimant had some symptoms consistent with depression and PTSD, but he appeared generally stable without significant complications throughout the relevant period" (Tr. 22).  Further, the ALJ opined, "The claimant presented for routine mental health treatment covering the relevant period.  The record fails to show any significant deterioration or worsening of the claimant's mental health surrounding the protective filing date.  The claimant's mental conditions appeared responsive to treatment measures.  The claimant reported that he was depressed once in a while, but he also smiled on occasion.  He reported that he was nervous around a lot of people.  However, he reported that he went to church and interacted with family members" (Id.).  Finally, the ALJ noted, "The claimant's treatment records indicate the claimant had some abnormalities on mental status examinations, including depressed and anxious mood and affect as well as isolated reports of suicidal ideation.  However, the claimant was fully oriented and generally had logical thought processes, no flight of ideas, no hallucinations, no dangerous behaviors, no suicidal ideation, no problems with memory, normal grooming and hygiene, normal speech, and no significant problems with attention or concentration.  He was treated with psychotropic medication and reported improvement with medication.  He generally denied side effects to medication" (Tr. 22) (citing Tr. 592-688).

Additionally, the ALJ details the psychological evaluations conducted by Dr. Emily Skaggs, Psy.D., and the State agency psychological consultants (Tr. 22-23).  Throughout the process of assigning weight to the medical opinions in the record, the ALJ discussed the relevant with each determination (Tr. 23-24).  The ALJ stated that "[t]he record shows that the claimant has problems understanding and remembering information, interacting with others, and adapting or managing himself due to symptoms and complications related to PTSD, agoraphobia and

depression, which supports moderate limitations in those areas.   However, the evidence supports marked limitations in maintaining concentration, persistence or pace given the claimant's significant problems sustaining attention" (Tr. 23); "[t]he evidence generally supports moderate mental limitations, except marked limitations in maintaining concentration, persistence or pace. The claimant's mental status examination showed some abnormalities during the evaluation, including restricted affect and depressed mood with poor concentration and redirected speech. However, the claimant also had no evidence of emotional distress, normal eye contact and cooperative attitude.   He had appropriate thought content as well as logical and goal directed organization of thought" (Id.); and "treatment records indicate the claimant had some abnormalities.   However, the claimant was fully oriented and generally had normal thought processes, no flight of ideas, no hallucinations, no problems with memory, normal grooming and hygiene, normal speech, and no significant problems with attention or concentration. Furthermore, the claimant's mental health symptoms with problems with concentration and socialization is adequately accounted for in the above-described residual functional capacity" (Tr. 24).

The ALJ's RFC determination considered and analyzed the medical evidence in the record, specifically in regard to Plaintiff's mental impairments.   The ALJ meticulously reviewed the evidence in the record, as well as the medical opinion proffered.   Finally, the ALJ considered the reports by Plaintiff, utilizing the proper standard.   Therefore, the ALJ's determination is supported by substantial evidence and comports with applicable law.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (<u>Id.</u>).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

H. Brent Brennenstuhl
United States Magistrate Judge

December 4, 2020

Copies:        Counsel of Record